IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FABIOLA SOLORIO-CARDENAS,

               Plaintiff,                        No. 01:13-cv-02324-HZ

      v.

CAROLYN W. COLVIN, Acting           OPINION & ORDER
Commissioner of Social Security,

              Defendant.

Fabiola Solorio-Cardenas
4074 S. Pacific Hwy. # 38
Medford, Oregon 97501

      Plaintiff Pro Se

S. Amanda Marshall
UNITED STATES ATTORNEY
District of Oregon
Ronald K. Silver
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201-2902

/ / /

1 - OPINION & ORDER

Nancy A. Mishalanie
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

     Attorneys for Defendant

HERNANDEZ, District Judge:

     Plaintiff Fabiola Solorio-Cardenas brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB) and supplemental security income (SSI).  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)).  I affirm the Commissioner's decision.

## PROCEDURAL BACKGROUND

     Plaintiff applied for DIB and SSI on July 20, 2009, alleging an onset date of December 31, 2002.  Tr. 197-203, 204-07, 208, 210.  Her applications were denied initially and on reconsideration.  Tr. 99-102, 103-06, 122-24, 125-26.

     On February 28, 2012, Plaintiff appeared for a hearing before an Administrative Law Judge (ALJ).  Tr. 37-68.  Although given the opportunity to have the hearing postponed so she could attempt to obtain counsel, she waived counsel and stated that she wanted the hearing to proceed.  Tr. 39-43.  On March 28, 2012, the ALJ found Plaintiff not disabled.  Tr. 14-36.  The Appeals Council denied review.  Tr. 1-8.

## FACTUAL BACKGROUND

     Plaintiff alleges disability based on problems with her back, shoulders, neck, and eyes. Tr. 295.  She also alleges disability based on depression.  Id.  At the time of the hearing, she was

2 - OPINION & ORDER

forty-seven years old. Tr. 44. She graduated from high school in Mexico, after which she

completed two years of an executive secretary course, also in Mexico. Tr. 45, 46. She has

numerous previous jobs, giving her a range of past relevant work experience. See Tr. 29 (ALJ's

Opinion summarizing testimony and noting ten separate past relevant work experiences).

Because the parties are familiar with the medical and other evidence of record, I refer to any

additional relevant facts necessary to my decision in the discussion section below.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can be

expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§

423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure. See Valentine v.

Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step

procedure to determine disability). The claimant bears the ultimate burden of proving disability.

Id.

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S.

137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner

determines whether the claimant has a "medically severe impairment or combination of

impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the

claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in

combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four.  Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work."  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can, the claimant is not disabled.  If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.  In step five, the Commissioner must establish that the claimant can perform other work.  Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that in two separate periods, Plaintiff had engaged in substantial gainful activity since her alleged onset date.  Tr. 22-23.  However, the ALJ nonetheless proceeded with the sequential evaluation because there was a continuous twelve-month period during which she did not engage in substantial gainful activity.  Tr. 23.   Next, at step two, the ALJ determined that Plaintiff had the following severe impairments:  (1) degenerative changes of the cervical spine; (2) osteoarthritis and impingement syndrome of the left shoulder; (3) degenerative change of the right shoulder; (4) spondylosis and dextroscoliosis of the thoracic spine; (5) bicipital tendinitis; and (6) generalized posterior cervical and upper thoracic muscle spasm.  Id.  However, the ALJ found at step three that the Plaintiff's impairments

did not meet or equal, either singly or in combination, a listed impairment.  Tr. 25.

At step four, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in the relevant regulations, but she is limited to lifting and/or carrying twenty pounds occasionally and ten pounds frequently, standing and/or walking for six hours in an eight-hour day, and sitting for six hours in an eight-hour day.  Id.  She is also limited to only occasional overhead reaching and to occasional performance of postural activities.  Id. With this RFC, the ALJ determined that Plaintiff is able to perform three of her past relevant jobs:  photofinishing sorter/packer, automobile salesperson, and bindery worker.  Tr. 29.  Thus, the ALJ determined that Plaintiff is not disabled.  Tr. 30.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal quotation marks omitted).  The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision.  Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."  Vasquez, 572 F.3d at 591 (internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

DISCUSSION

Plaintiff's "Opening Brief" is a one paragraph handwritten letter dated October 30, 2014.

See ECF 24 (construing Plaintiff's October 30, 2014 Letter as her Opening Brief and ordering it

be filed as such); ECF 25 (letter filed as Plaintiff's Opening Brief).[1]  There, she asks the Court not

to dismiss her case because she is physically and mentally ill as a result of accidents at work and

home.  ECF 25.  She further states that her depression is under control but her physical pain and

fibromyalgia are present all the time.  Id.  I interpret Plaintiff's statements as an argument that the

ALJ erred in assessing her RFC and concluding that she could continue to perform light work

with some limitations.  Because the RFC was based on the ALJ's findings that Plaintiff was not

entirely credible and that the opinion of the state agency reviewing consultant on reconsideration

was entitled to great weight, I address those particular parts of the ALJ's decision.[2]

---

[1]  Attached to Plaintiff's letter is a July 18, 2013 letter addressed "To Whom it May Concern" from Nurse Practitioner Megan Orr.  This letter was filed with Plaintiff's letter as part of Plaintiff's Opening Brief.  I do not consider it, however, because my review is limited to the evidence in the administrative record.  Even if Plaintiff used the Orr Letter to request a remand based on new evidence, I would reject her request because the Orr Letter lists only the various conditions for which Orr has treated Plaintiff and contains no actual medical records or an opinion from Orr which would be relevant.  As a result, the new evidence is not material to a disability determination.  Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001) ("in determining whether to remand a case in light of new evidence, the court examines both whether the new evidence is material to a disability determination and whether a claimant has shown good cause for having failed to present the new evidence to the ALJ earlier").

[2]  Plaintiff's letter contains what appear to be contradictory statements because she states she is mentally ill but she also states that her depression is under control.  In her DIB and SSI applications, the only mental impairment she claimed was depression.  Tr. 295.  The record shows that she received counseling and medication for depression with good results.  See Tr. 23-24 (ALJ discussion of mental impairments and citing to record).  As the ALJ noted, the record also shows a history of alcohol dependence, but it was reportedly in remission and Plaintiff testified at the hearing that she was currently clean and sober.  Tr. 24.  Although there was one examining psychologist who diagnosed Plaintiff with adjustment disorder with anxiety, he opined that she was still able to work.  Id. (citing Tr. 634).  Based on the statement in her letter

6 - OPINION & ORDER

In arriving at the RFC, the ALJ found that Plaintiff's allegations regarding her limitations were not credible because they were not supported by the objective medical evidence or her treatment history, and they were contradicted by her reported activities.  The ALJ is responsible for determining credibility.  Vasquez, 572 F.3d at 591.  Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering.  Carmickle v. Comm'r, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'").

"The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities."  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks omitted); see also Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (in credibility determination, ALJ may properly consider several factors, including the effectiveness of any pain medication, the lack of any side effects from prescribed medications, and the ability to perform household chores).

_____

that her depression is under control, and based on the record as a whole, I conclude that the ALJ made no error in his finding that Plaintiff's mental impairments were not severe.  Thus, to the extent her letter can be construed as an argument against that finding, I reject the argument.

7 - OPINION & ORDER

Additionally, the ALJ may consider objective medical evidence in determining a claimant's credibility regarding subjective symptom testimony, as long as the ALJ does not reject such testimony solely because it is unsubstantiated by the objective medical evidence. 20 C.F.R. §§ 404.1529(c), 416.929(c); Rollins v. Massanari, 261 F.3d 853, 856, 857 (9th Cir. 2001) ("Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain[;] . . .  While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (internal quotation marks and brackets omitted) .

The ALJ first discussed the objective medical evidence, concluding that it did not support the level of work restrictions alleged by Plaintiff.  Tr. 27; see also Tr. 26 (listing the relevant assertions and testimony regarding Plaintiff's alleged work restrictions).  The ALJ noted that in both 2010 and 2011, Plaintiff underwent physical examinations which showed normal gait, good motor strength, range of motion in the upper extremities that was within normal limits, no loss in sensation or reflexes, and no pain or tenderness of the cervical spine.  Tr. 27 (citing Tr. 621-28; Tr. 646).

Next, the ALJ discussed Plaintiff's treatment history and found it "not commensurate with her allegations."  Tr. 27.  She has been treated relatively conservatively for her various impairments with no evidence that an orthopedic surgeon has seriously contemplated surgery regarding her neck or shoulders.  Id.; see also Tr. 420 (Feb. 28, 2008 report from Dr. Marie Wehage, M.D. that Plaintiff had been seen by "orthopedics" who reported no indication for any

8 - OPINION & ORDER

surgical intervention).  She does not use any assistive device to ambulate or any device to relieve her pain.  Id.  Treatment for her mental impairments has been limited to talk therapy and medication monitoring.  Id.  The record also shows that she experienced good pain relief with medications and acupuncture.  Id.; Tr. 323 (February 2012 report by Plaintiff that "Vicodin 500 mg is wonderful [and] really helps me.");  Tr. 420 (February 2008 report by Plaintiff that acupuncture improved her pain symptoms).  She also testified at the hearing that Vicodin works well.  Tr. 27; Tr. 61 (hearing testimony that the Vicodin "help[s] [a] lot").

As to her activities, the ALJ noted that Plaintiff had worked after her alleged onset date. Tr. 27.  She also had studied to become a truck driver and obtained a certification for that job. Id. (citing Tr. 279, 301).  In 2006, Plaintiff told an examining physician that she occasionally worked and was able to take care of activities of daily living including shopping, housework, and caring for her children.  Id. (citing Tr. 340).  In 2008, she was working with vocational rehabilitation and in 2009 she was in school and doing well.  Id. (citing Tr. 507, 522).  In 2010, she was still in school and later that year reported walking daily.  Tr. 27-28 (citing Tr. 598, 622). She also reported in 2010 that she was capable of managing basic activities of daily living, including cleaning, shopping, and cooking.  Tr. 28 (citing Tr. 633).  She indicated that she could work if she could find a job within her physical limits.  Id. (citing Tr. 633).  At the hearing in 2012, she testified that could work if she had a job within her physical limitations.  Id.; see also Tr. 58.  When asked to describe her day, Plaintiff testified that she tries to keep busy all day by doing housework.  Id.; see also Tr. 61.  She cleans the house, takes care of her children's clothes, cooks, and sometimes takes care of her grandchildren.  Id.  She drives and grocery shops, although she has the store pack items in several bags and has her children help her unload when

she gets home.  Id.

Plaintiff does not challenge the accuracy of the information relied on by the ALJ in his

credibility determination.  I have independently reviewed the administrative record and find that

the ALJ's reasons are supported by the record.  Given that the relevant caselaw accepts the ALJ's

reasons for discrediting Plaintiff's subjective limitations testimony as valid, and given that they

are supported by substantial evidence in the record, the ALJ did not err in finding that Plaintiff's

claimed limitations were not fully credible.

In determining the RFC, the ALJ considered several medical opinions in the record.  It is

the ALJ's responsibility to assess and weigh the medical evidence.  Skelton v. Comm'r, No.

06:13-CV-01117-HZ, 2014 WL 4162536, at *10 (D. Or. Aug. 18, 2014) (citing Vasquez, 572

F.3d at 591); see also Barker v. Colvin, No. CV-12-08216-PCT-FJM, 2013 WL 4950495, at *2

(D. Ariz. Sept. 13, 2013) ("It is the ALJ's responsibility to assess a claimant's RFC based on all

relevant medical evidence in the record.") (citing 20 C.F.R. § 404.1546; Soc. Sec. Ruling (SSR)

96–5p).

The ALJ noted that in 2006, examining physician Dr. Anna Lattin, M.D., opined that

Plaintiff was capable of performing light work.  Tr. 28 (citing Tr. 343).  The ALJ credited this

opinion but gave more weight to a later opinion by Dr. MaryAnn Westfall, the non-examining

state agency consultant on reconsideration who assessed additional limitations.  Id.  The ALJ also

gave some weight to an October 2006 state agency consultant's opinion that Plaintiff's physical

impairments were non-severe, but the ALJ again noted that subsequent medical evidence

supported some physical restrictions.  Id. (citing Tr. 379).

The ALJ cited the opinion of treating physician, Dr. William Palm, M.D., in response to a

10 - OPINION & ORDER

question by Plaintiff, that obtaining disability related to her recurrent neck pain was "very unlikely." Id. (citing Tr. 598).

In July 2010, Dr. Gregory Grunwald, D.O., performed a comprehensive musculoskeletal evaluation of Plaintiff and opined that she could lift up to 25 pounds with no extended above-the-shoulder or overhead work for any lengthy period of time. Tr. 627. He assessed her as being capable of performing light work. Id. The ALJ found this opinion to be "essentially consistent" with Dr. Westfall's opinion and explained that to the extent there was any perceived difference in the two opinions, he credited Dr. Westfall's because she more thoroughly considered the issue of Plaintiff's credibility. Id.

The ALJ also noted that in January 2012, Nurse Practitioner Megan Orr referred to an opinion by Dr. Peter Grant regarding limitations on Plaintiff's hands and upper extremities because of carpal tunnel syndrome. Id. (citing Tr. 653). As the ALJ noted, however, Dr. Grant's records are not in the administrative record and the record did not contain any reliable evidence to support such work restrictions. Tr. 29.

The ALJ discussed the March 2005 opinion of treating nurse practitioner Cindy Harper that Plaintiff was limited to sedentary work. Tr. 28 (citing Tr. 348). The ALJ noted, correctly, that the opinion was entitled to less weight because it was not from an acceptable medical source, see 20 C.F.R. §§ 404.1513(a),416.913(a), and because her opinion was based primarily on Plaintiff's subjective complaints of pain, which the ALJ had already determined were not fully credible. Id.

The ALJ gave the most weight to Dr. Westfall's opinion that Plaintiff was able to perform work at the light level with occasional bilateral overhead reaching. Tr. 28 (citing Tr. 80-81, 93-

94).  The ALJ found Dr. Westfall's opinion to be consistent with the objective medical evidence.

The ALJ also added the limitation of only occasional postural limitations.  Tr. 25.

The ALJ's discussion of the relevant medical evidence supports his RFC.  As the ALJ

noted, no treating doctor had supported Plaintiff's contention that she was unable to work.  Tr.

28.  The only treating practitioners who rendered an opinion were Dr. Palm, who indicated it was

unlikely Plaintiff would obtain disability, and Nurse Practitioner Harper.  But, the ALJ gave

germane reasons to reject Harper's testimony.  Under social security regulations governing the

weight to be accorded to medical opinions, "acceptable medical sources" include licensed

physicians and licensed psychologists, but not nurse practitioners.  20 C.F.R. §§ 404.1513(a),

(d)(1), 416.913(a), (d)(1).  Nurse practitioners are deemed to be "other sources."  Id.  Under

Ninth Circuit law, evidence from "other sources" is considered  under the same standard as that

used to evaluate lay witness testimony, meaning the ALJ may reject it for reasons germane to the

witness.  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (because physician's assistant

was not an acceptable medical source, ALJ could discount physician's assistant's opinion for

germane reasons); Dale v. Colvin, No. 03:13-cv-01187-HZ, 2014 WL 1917980, at *7 (D. Or.

May 13, 2014) (because nurse practitioner was an "other source," ALJ could reject opinion for

germane reasons).  It was not improper to reject the nurse practitioner's opinion because it was

based on Plaintiff's subjective reports of pain.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th

Cir. 2005) (ALJ did not err in rejecting opinions based on subjective complaints).

The RFC was actually consistent with, or more beneficial to Plaintiff than, the opinions of

examining physicians Dr. Lattin and Dr. Grunwald.  As the ALJ noted, Dr. Westfall's opinion

limited Plaintiff to light work, as did Drs. Lattin and Grunwald.  The ALJ added limitations to

12 - OPINION & ORDER

Dr. Lattin's opinion and found that Dr. Grunwald's opinion was essentially consistent with Dr. Westfall's opinion.

The ALJ's finding that Dr. Westfall's opinion was consistent with the objective medical evidence is supported by the record. A non-examining physician's opinion may amount to substantial evidence when it is supported by other evidence in the record. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (opinion of a nonexamining medical expert "may constitute substantial evidence when it is consistent with other independent evidence in the record"); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (opinion of nontreating source may itself be substantial evidence when it is "based on independent clinical findings that differ from those of the treating physician"). The ALJ did not err in his evaluation of the medical evidence. His RFC based primarily on Dr. Westfall's opinion is supported by substantial evidence in the record. As a result, his determination that she can perform her past relevant work at step four is not in error.

## CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this __15__ day of __February__, 2015

Marco A. Hernandez
United States District Judge

13 - OPINION & ORDER